UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

B.E. TECHNOLOGY, LLC,     )
                           )
     Plaintiff,       )
                           )
v.                     )     No.: 2:12-cv-02833-JPM-tmp
                           )
PEOPLE MEDIA, INC.,      )
                           )
     Defendant.      )

---

### ORDER DENYING MOTION TO TRANSFER VENUE

---

Before the Court is the Motion to Transfer Venue ("Motion to Transfer") of Defendant People Media, Inc. ("Defendant" or "People Media"), filed February 5, 2013.  (ECF No. 35.)  For the reasons that follow, the Motion to Transfer is DENIED.

**I.   BACKGROUND**

This case concerns People Media's alleged infringement of United States Patent No. 6,628,314 (the "'314 patent").  (ECF No. 1.)  Plaintiff B.E. Technology, LLC ("Plaintiff" or "B.E."), is the assignee of the '314 patent (ECF No. 40 at 2), currently owning "all right, title, and interest in the '314 patent, and has owned all right, title, and interest throughout the period" of the alleged infringement (ECF No. 1 ¶ 10).

B.E. alleges that People Media infringed the '314 patent "by using a method of providing demographically targeted

advertising that directly infringes at least Claim 11 of the '314 patent either literally or under the doctrine of equivalents." (Id. ¶ 11.)

B.E. filed a Complaint in this Court on September 22, 2012. (ECF No. 1.)  People Media filed its Answer and Counterclaim on December 31, 2012.  (ECF No. 21.)  On January 25, 2013, B.E. filed a Motion to Dismiss and Motion to Strike.  (ECF No. 33.) On February 5, 2013, People Media filed its Motion to Transfer. (ECF No. 35.)  On February 11, 2013, People Media filed a Motion to Stay the instant case pending resolution of its Motion to Transfer.  (ECF No. 37.)  The Court granted People Media's Motion to Stay on February 12, 2013.  (ECF No. 38.)  B.E. responded in opposition to Defendant's Motion to Transfer on February 22, 2013.  (ECF No. 40.)  With leave of this Court (ECF No. 41), People Media filed a Reply in support of Its Motion to Transfer on March 11, 2013 (ECF No. 43).

People Media seeks to transfer this case to the Northern District of California.  (ECF No. 35-1 at 1.)  "People Media is a Delaware corporation, with its principal places of business in Los Angeles, California and Dallas, Texas." (Id. at 6.)  To support its Motion to Transfer, People Media contends "none of the nineteen Defendants that [B.E.] sued have any connection whatsoever" to the Western District of Tennessee; that "the overwhelming majority of Defendants are located in the Northern

District of California or on the West Coast;" that many of
People Media's relevant employees and documents are located in
Los Angeles, California; that "B.E. has no meaningful connection
to" the Western District of Tennessee; that "relevant non-party
witnesses likely to have relevant information regarding the
validity of the asserted patent" reside in the Northern District
of California; and that the "cost and convenience of attendance
for a majority of the willing witnesses plainly favors
California." (Id. at 1-2.)  Further, People Media asserts that
"judicial efficiency" will be "achieved by uniform treatment of
the numerous transfer requests" currently before the Court.
(Id. at 2.)  Alternatively, People Media requests the Court
transfer the instant case to the Northern District of Texas,
which it asserts is a more convenient forum than the Western
District of Tennessee.  (Id.)

B.E. argues that transfer is inappropriate because it has
substantial connections with this district.  (See ECF No. 40.)
B.E. is a limited liability company incorporated in Delaware.
(ECF No. 1 ¶ 2.)  B.E. was originally registered in Michigan,
but formally registered to conduct business in Tennessee in
September 2012.  (ECF No. 40 at 2.)  B.E. contends that Memphis,
Tennessee, is its principal place of business.  (ECF No. 1 ¶ 2.)
Martin David Hoyle ("Hoyle"), B.E.'s founder and CEO, is the
named-inventor of the '314 patent.  (ECF No. 40 at 1-2.)  B.E.

3

argues that Hoyle has been "present in this District since 2006, and B.E. since at least 2008," and that this District is B.E.'s principal place of business. (Id. at 6.) B.E. also argues that transfer to either the Northern District of California or the Northern District of Texas would be less convenient for B.E. because Hoyle — CEO of B.E. and inventor of the '314 patent — resides in the Western District of Tennessee. (Id. at 8.) Further, B.E. argues that the majority of B.E.'s documents have been maintained for years in the Western District of Tennessee. (Id. at 14.)

## II.  STANDARD

People Media moves the Court to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a) or, alternatively, to the Northern District of Texas. (ECF No. 35-1 at 2.) The statute provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate." Reese v. CNH Am. LLC, 574 F.3d 315, 320 (6th Cir. 2009).

In determining whether to transfer a case under § 1404(a),
the court must first determine whether the claim could have been
brought in the transferee district.  28 U.S.C. § 1404(a)
(allowing transfer to any other district in which the claim
"might have been brought").  Once the court has made this
threshold determination, the court must then determine whether
party and witness "convenience" and "the interest of justice"
favor transfer to the proposed transferee district.  Reese, 574
F.3d at 320; Esperson v. Trugreen Ltd., No. 2:10-cv-02130-STA-
cgc, 2010 WL 4362794, at *5 (W.D. Tenn. Oct. 5, 2010), adopted
2010 WL 4337823 (W.D. Tenn. Oct. 27, 2010).  In weighing these
statutory factors, the court may still consider the private- and
public-interest factors set forth in the pre-Section 1404(a)
case, Gulf Oil v. Gilbert, 330 U.S. 501, 508-09 (1947), but
courts are not burdened with "preconceived limitations derived
from the forum non conveniens doctrine."  Norwood v.
Kirkpatrick, 349 U.S. 29, 31 (1955) (quoting All States Freight
v. Modarelli, 196 F.2d 1010, 1011 (3d Cir. 1952)) (internal
quotation marks omitted); Esperson, 2010 WL 4362794, at *5.  The
United States Court of Appeals for the Sixth Circuit has stated
that when deciding "a motion to transfer under § 1404(a), a
district court should consider the private interests of the
parties, including their convenience and the convenience of
potential witnesses, as well as other public-interest concerns,

such as systemic integrity and fairness, which come under the
rubric of 'interests of justice.'"  Moore v. Rohm & Haas Co.,
446 F.3d 643, 647 n.1 (6th Cir. 2006).

Additionally, the "interest of justice" factor has been
interpreted broadly by courts, influenced by the individualized
circumstances of each case.  The United States Court of Appeals
for the Federal Circuit has set forth a non-exhaustive list of
pertinent public-interest factors:

> The public interest factors include (1) the
> administrative difficulties flowing from court
> congestion; (2) the local interest in having localized
> interests decided at home; (3) the familiarity of the
> forum with the law that will govern the case; and (4)
> the avoidance of unnecessary problems of conflicts of
> laws or in the application of foreign law.

In re Acer Am. Corp., 626 F.3d 1252, 1254 (Fed. Cir. 2010); see
also In Re Nintendo Co., Ltd., 589 F.3d 1194, 1198 (Fed. Cir.
2009) (finding the local-interest factor weighed heavily in
favor of transfer); Cincinnati Ins. Co. v. O'Leary Paint Co.,
676 F. Supp. 2d 623, 633 (W.D. Mich. 2009) (considering
additional factors such as the relative docket congestion of the
transferor and transferee districts).

Initially, B.E. argues that there is a strong presumption
in favor of its choice of forum, and that its choice of forum
should not be disturbed unless the defendant carries its burden
to demonstrate that the balance of convenience strongly favors
transfer.  (ECF No. 40 at 4-8.)  B.E.'s argument is erroneously

6

derived from the more stringent forum-non-conveniens standard. Compare Hunter Fan Co. v. Minka Lighting, Inc., No. 06-2108 Ml/P, 2006 WL 1627746 (W.D. Tenn. June 12, 2006) (applying the appropriate private- and public-interest factors but relying on the forum-non-conveniens doctrine to accord strong deference to the plaintiff's choice of forum), with OneStockDuq Holdings, LLC v. Becton, Dickinson, & Co., No. 2:12-cv-03037-JPM-tmp, 2013 WL 1136726, at *3 (W.D. Tenn. Mar. 18, 2013), and Roberts Metals, Inc. v. Florida Props. Mktg. Grp., Inc., 138 F.R.D. 89, 92-93 (N.D. Ohio 1991) (recognizing defendants need to make a lesser showing to overcome plaintiff's choice of forum under § 1404(a)), aff'd per curiam, 22 F.3d 1104 (6th Cir. 1994). Although there is a strong presumption in favor of the plaintiff's choice of forum under the doctrine of forum non conveniens, under § 1404(a), a plaintiff's choice of forum may be considered, but is entitled to less deference.  Discussing the difference between the common-law doctrine of forum non conveniens and the federal transfer-of-venue statute in Norwood, the Supreme Court stated,

> When Congress adopted § 1404(a), it intended to do more than just codify the existing law on forum non conveniens. . . . [W]e believe that Congress, by the term "for the convenience of parties and witnesses, in the interest of justice," intended to permit courts to grant transfers upon a lesser showing of inconvenience.  This is not to say that the relevant factors have changed or that the plaintiff's choice of

7

> forum is not to be considered, but only that the
> discretion to be exercised is broader.

Norwood, 349 U.S. at 32; see also Lemon v. Druffel, 253 F.2d
680, 685 (6th Cir. 1958) ("The choice of the forum by the
petitioner is no longer as dominant a factor as it was prior to
the ruling in Norwood v. Kirkpatrick[.]"); Esperson, 2010 WL
4362794, at *5-6.

Defendant's burden under § 1404(a) is to demonstrate that a
change of venue to the transferee district is warranted. See
Eaton v. Meathe, No. 1:11-cv-178, 2011 WL 1898238, at *2 (W.D.
Mich. May 18, 2011); Amphion, Inc. v. Buckeye Elec. Co., 285 F.
Supp. 2d 943, 946 (E.D. Mich. 2003); Roberts Metals, Inc., 138
F.R.D. at 93. "Merely shifting the inconvenience from one party
to another does not meet Defendant's burden." McFadgon v. Fresh
Mkt., Inc., No. 05-2151-D/V, 2005 WL 3879037, at *2 (W.D. Tenn.
Oct. 21, 2005). "[T]he movant must show that the forum to which
he desires to transfer the litigation is the more convenient one
vis a vis the Plaintiff's initial choice." Roberts Metals,
Inc., 138 F.R.D. at 93 (quoting Mead Corp. v. Oscar J. Boldt
Constr. Co., 508 F. Supp. 193, 198 (S.D. Ohio 1981)) (internal
quotation marks omitted). If the court determines that the
"balance between the plaintiff's choice of forum and defendant's
desired forum is even, the plaintiff's choice of [forum] should

prevail." Stewart v. Am. Eagle Airlines, Inc., No. 3:10-00494, 2010 WL 4537039, at *2 (M.D. Tenn. Nov. 3, 2010).

## III. ANALYSIS

People Media states that it consents to jurisdiction in the Northern District of California. (See ECF No. 35-1 at 11.) B.E. does not dispute that this action could have been brought in the Northern District of California. (See ECF No. 40 at 4.) The Court agrees that B.E. could have brought suit in the Northern District of California. Therefore, the only issue remaining is whether the balance of the statutory factors — the convenience to the witnesses, the convenience to the parties, and the interest of justice — favors transfer to the Northern District of California. The Court will address each statutory factor separately and balance these factors to determine whether transfer to the Northern District of California is proper pursuant to § 1404(a). The Court will then address whether, alternatively, transfer to the Northern District of Texas is appropriate.

### A.   Convenience of the Witnesses

When asserting that a transferee district is more convenient for witnesses, a party "must produce evidence regarding the precise details of the inconvenience" of the forum chosen by the plaintiff. Esperson, 2010 WL 4362794, at *8. To satisfy its burden, the movant must do "more than simply

9

assert[] that another forum would be more appropriate for the witnesses; he must show that the witnesses will not attend or will be severely inconvenienced if the case proceeds in the forum district." Id. (quoting Roberts Metals, Inc., 138 F.R.D. at 93). Further, "[t]o sustain a finding on [this factor] . . . the party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable a court to assess the materiality of evidence and the degree of inconvenience." Eaton v. Meathe, No. 1:11-cv-178, 2011 WL 1898238, at *3 (W.D. Mich. May 18, 2011) (quoting Rinks v. Hocking, 1:10-CV-1102, 2011 WL 691242, at *3 (W.D. Mich. Feb. 16, 2011)) (internal quotation marks omitted). It is the "materiality and importance of the testimony of prospective witnesses, and not merely the number of witnesses," that is crucial to this inquiry. Rinks, 2011 WL 691242, at *3.

People Media contends that witness convenience favors transfer to the Northern District of California. (ECF No. 35-1 at 12-14; ECF No. 43 at 6-7.) To support this contention, People Media asserts that many of its witnesses responsible for maintaining relevant information reside in California. (ECF No. 35-1 at 11.) Additionally, People Media asserts that "all of the presently known potential non-party witnesses affiliated with B.E. reside outside of Tennessee." (Id. at 9.) People

10

Media identifies nine non-party witnesses with "relevant information regarding the technology at issue and prior art," the majority of which reside in California. (Id. at 7-8, 11.) Further, People Media asserts that Hoyle is the "single relevant witness that lives in Tennessee." (Id. at 13.)

In response, B.E. argues that "the Western District of Tennessee is more convenient for B.E. than the Northern District of California," as "B.E. and its CEO, the inventor of the ['314 patent] reside within the District." (ECF No. 40 at 8.) Further, B.E. asserts that "[n]one of People Media's witnesses are located within the Northern District of California, and all of People Media's potential witnesses that have technical knowledge relevant to the infringement of the ['314 patent] are located in Dallas." (Id. at 9.) Accordingly, "it is more convenient and less disruptive for People Media's Texas witnesses to testify in this District than in the Northern District of California." (Id.)

Because the convenience of party and non-party witnesses is given different weight, the Court will analyze the witnesses separately. See Azarm v. $1.00 Stores Servs., Inc., No. 3:08-1220, 2009 WL 1588668, at *4 (M.D. Tenn. June 5, 2009) ("[T]he convenience of potential non-party witnesses, who are not subject to the control of the parties, is a particularly weighty consideration, because it is generally presumed that party

witnesses will appear voluntarily in either jurisdiction, but non-party witnesses, with no vested stake in the litigation, may not.").

### 1. Party Witnesses

People Media argues that "[i]n the aggregate, this litigation will be significantly less burdensome and costly for the parties if it is transferred to the Northern District of California" as "People Media's [g]eneral manager and marketing, product management, and finance departments are located in California." (ECF No. 35-1 at 13.)  In its Motion to Transfer, People Media includes the Declaration of Chris Haltiner, Director of Development, which states the locations of various departments, operations, and employees charged with maintaining financial, sales, and marketing documents.  (Haltiner Decl., ECF No. 35-28, ¶¶ 1, 4-6.)

B.E. asserts that People Media has failed to provide any "particularized information enabling the Court to ascertain how much weight to give the claim of inconvenience." (ECF No. 40 at 10.)  In support, B.E. states that People Media "offers precious little about whom the witnesses are that will be inconvenienced by the case staying in Tennessee, what they will say, and why they are important to this case." (Id.)  Accordingly, B.E. argues that People Media has not met its burden in demonstrating

that litigating the instant case in the Western District of Tennessee would be inconvenient for its witnesses.  (Id.)

While People Media asserts that it has potential witnesses located in the Central District of California (Los Angeles, California) and the Northern District of Texas (Dallas, Texas), People Media does not assert that any of its witnesses are located in the Northern District of California.  (See Haltiner Decl., ECF No. 35-28, ¶¶ 4-6; ECF No. 35-1; ECF No. 43 at 7.) Additionally, People Media has failed to provide any information about the identity of its potential witnesses, the materiality of their testimony, the subject matters on which they are likely to testify, or the burdens they would likely endure by traveling to Tennessee.  Accordingly, People Media's "bare allegations" of witness inconvenience are insufficient to satisfy its burden on this matter.  Esperson, 2010 WL 4362794, at *8.

Moreover, People Media does not provide any evidence showing that its employees will be unwilling to testify in this District if asked to do so.  Courts have noted that "normally a corporation is able to make its employees available to testify when needed."  Clark v. Dollar Gen. Corp., No. 3-00-0729, 2001 U.S. Dist. LEXIS 25975, at *9 (M.D. Tenn. Mar. 6, 2001); see also Zimmer Enters. v. Atlandia Imps., Inc., 478 F. Supp. 2d 983, 991 (S.D. Ohio Mar. 14, 2007) (finding that the convenience of witnesses who are employees "will not ordinarily be

13

considered, or at least, that the convenience of such employees will not generally be given the same consideration as is given to other witnesses"). Accordingly, it appears that People Media's employees will be able to attend absent any evidence to the contrary.

People Media also asserts that the only party witness who would be inconvenienced by transfer to the Northern District of California is Hoyle. (ECF No. 43 at 7-8.) While B.E. did not specifically identify any witnesses beyond Hoyle, B.E. does not have the burden to do so. A simple numerical advantage is insufficient on the issues raised by a motion to transfer. Additionally, People Media has failed to appropriately identify a single likely material witness in this matter. As a result, convenience to party witnesses does not weigh in favor of transfer.

### 2. Non-Party Witnesses

While convenience to party witnesses is an important consideration, "it is the convenience of non-party witnesses, rather than employee witnesses . . . that is the more important factor and is accorded greater weight." Steelcase Inc. v. Smart Techs., 336 F. Supp. 2d 714, 721 (W.D. Mich. Mar. 5, 2004) (citation omitted) (internal quotation marks omitted).

People Media argues that "[t]he Northern District of California is the most convenient venue for the non-party

14

witnesses, which is often viewed as the most important factor in the transfer balance." (ECF No. 35-1 at 12 (citing In re Genentech, Inc., 566 F.3d 1338, 1343 (Fed. Cir. 2009)).) People Media asserts that "at least seven of the Defendants are headquartered in the Northern District of California or maintain significant technological operations in that District," and "[c]onsequently, it is likely that numerous witnesses with knowledge about the technology . . . are located in California." (Id.)

People Media also asserts that "over a dozen witnesses with information regarding prior art . . . live in California." (Id.)  These individuals include Nick Grouf, David Waxman, Paul D. Angles, Douglas O. Blattner, C. Douglass Thomas, David W. Roth, Dylan Salisbury, A. Nathaniel Goldhaber, and Gary Fitts. (Id. at 7-8.)  None of these individuals are located in the Western District of Tennessee and five of them are located in the Northern District of California.  (Id.)  People Media asserts that these "individuals possess knowledge regarding potentially invalidating prior art." (Id. at 7.)

Further, People Media asserts that "all of the presently known potential non-party witnesses affiliated with B.E. reside outside of Tennessee." (Id. at 9.)  These individuals include Randall R. Rupp, a managing member of B.E., located in Michigan,

and Mark J. McKinley, formerly a major shareholder and managing member of B.E., located in Michigan.  (Id. at 5.)

B.E. argues that the convenience of third-party witnesses is not entitled to great weight in the instant case because People Media has not established that the "third party testimony will be material or important." (ECF No. 40 at 12 (citing Rinks, 2011 WL 691242, at *3).)  B.E. argues that People Media has not stated the "relevance, materiality, and importance" of the non-party witnesses' testimony.  (Id. at 13-14.)  B.E. further argues that People Media has not presented any evidence that prior-art witnesses will be unwilling or inconvenienced by testifying in Tennessee, and asserts that prior-art testimony is "almost certain to be severely limited at the time of trial" and, therefore, such testimony does not weigh in favor of transfer.  (Id. at 12-13.)  Finally, B.E. asserts that Hoyle has been the CEO of B.E. since 2008, and that the "presumed location of former employees or managers" is not relevant.  (Id. at 7.)

The availability of compulsory process for unwilling witnesses is a consideration closely related to the convenience-of-witnesses factor and the costs of procuring the witness, and therefore is an important consideration for the Court.  See, e.g., In re Acer, 626 F.3d at 1255; Rinks, 2011 WL 691242, at *4.  Whether this factor should be given considerable weight depends on the materiality of the testimony to the resolution of

the case.  <u>Rinks</u>, 2011 WL 691242, at *4.  A federal court in the
Northern District of California would be able to compel the
prior-art witnesses to testify at trial.  <u>See</u> Fed. R. Civ. P.
45(b)(2).  In contrast, neither the third-party corporate
witnesses nor the prior-art witnesses would be subject to the
subpoena power in this district, <u>see</u> Fed. R. Civ. P.
45(c)(3)(A)(ii), but would be available for deposition in the
Northern District of California if unwilling to testify in this
district.  Therefore, the testimony of such witnesses
potentially would "not be live and therefore could be less
persuasive."  <u>Rinks</u>, 2011 WL 691242, at *4.

The Court, however, finds that People Media has not met its
burden in this case.  People Media has failed to show that the
third-party witnesses' testimony will be material and does not
submit any evidence suggesting that the third-party witnesses
will be unwilling or inconvenienced by traveling to Tennessee to
provide testimony.  Additionally, to the extent the non-party
witnesses' testimony may be presented by deposition, witness
inconvenience would not be an issue.  While People Media sets
forth the fact that third-party witnesses would not be subject
to subpoena in the Western District of Tennessee, this general
statement is not sufficient to allow the Court to determine
whether live testimony of People Media's non-party witnesses is

17

necessary.  As a result, the convenience to non-party witnesses does not weigh in favor of transfer.

**B.   Convenience of the Parties**

People Media argues that the Northern District of California is a more convenient forum than the Western District of Tennessee.  (ECF No. 35-1 at 11, 14-15.)  While People Media organizes its arguments somewhat differently than the Court, the Court finds the considerations relevant to the convenience-of-the-parties factor are the location of the sources of proof and the parties' financial hardships due to litigation in the chosen forum.

**1.   Location of Sources of Proof**

People Media argues its sales, financial, and marketing documents are located in Los Angeles, California.  (ECF No. 35-1 at 6.)  People Media also argues that "multiple third party witnesses likely to have documents and information pertaining to the technology at issue are also located in California [and] many of [the other] Defendants are headquartered in the Northern California or maintain significant technological operations in that District."  (Id. at 15.)

People Media further argues that, "because B.E. is a non-practicing entity, it will have little information in [the Western District of Tennessee]."  (Id.)  Additionally, People Media states that B.E.'s documents "appear to be in either

18

Michigan or Louisiana, and the burden associated with accessing them will be approximately the same, regardless of whether this litigation occurs in Tennessee or California." (Id. at 14.)

B.E. asserts that "[n]one of People Media's documents are located in the Northern District of California, and its technical documents relevant to the design and development of the accused instrumentalities are located in Dallas[,] far closer to [the Western District of Tennessee] than the Northern District of California." (ECF No. 40 at 14.) Further, B.E. argues that none of its sources of proof are located in the Northern District of California, as the majority of B.E.'s documents have "for years [] been maintained in the Western District of Tennessee." (Id.)

B.E. also contends that "[t]he location of relevant documentary evidence is increasingly less important in deciding motions to transfer," and that because documents can be exchanged electronically, the weight given this factor should be minimal. (Id. at 15.) B.E. finally argues that this factor does not weigh in favor of transfer because "it can be expected that People Media will eventually produce its documents to B.E.'s lead counsel in California, not to B.E. in Tennessee." (Id.)

As an initial matter, the Court disagrees with B.E.'s contention that advances in electronic document transfer reduce

the importance of the location-of-sources-of-proof factor.  This notion has been expressly rejected by the Federal Circuit.  See, e.g., In re Link_A_Media Devices Corp., 662 F.3d 1221, 1224 (Fed. Cir. 2011) (reversing a district court that did not consider the factor, stating, "While advances in technology may alter the weight given to these factors, it is improper to ignore them entirely"); In re Genentech, 566 F.3d at 1345-46 (finding clear error where a district court "minimized the inconvenience of requiring the petitioners to transport their documents by noting that '[t]he notion that the physical location of some relevant documents should play a substantial role in the venue analysis is somewhat antiquated in the era of electronic storage and transmission'" (quoting Sanofi-Aentis Deutschland GmbH v. Genentech, Inc., 607 F. Supp. 2d 769, 777 (E.D. Tex. 2009))).

The Court agrees that it is likely that third-party documents relevant to the instant litigation are located in the Northern District of California on the basis that other Defendants are located in that district, but the Court disagrees that this is enough to tip the balance in favor of transfer. Motions to transfer venue pursuant to § 1404(a) are adjudicated "according to an individualized, case-by-case consideration of convenience and fairness . . . [and] balance [of] a number of case-specific factors." Stewart Org., Inc. v. Ricoh Corp., 487

U.S. 22, 29 (1988); <u>accord</u> <u>United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.</u>, 667 F. Supp. 2d 987, 992 (W.D. Tenn. 2010).  While People Media asserts that it will have relevant documents located in the Central District of California (Los Angeles, California) and the Northern District of Texas (Dallas, Texas), People Media does not assert that any of its own documents are located in the Northern District of California. (<u>See</u> ECF No. 35-1 at 1-3.)  Accordingly, the fact that Defendants in other cases will have documents located in the Northern District of California is not pertinent to the Court's consideration of this factor.

Therefore, the Court finds that both parties maintain documents in their respective districts; that both sets of documents will be integral to the proceedings; and that People Media will be expected to serve its documents on B.E.'s counsel in California, not in the Western District of Tennessee (<u>see</u> ECF No. 40 at 15).  Given that People Media will have sources of proof in both Texas and California – but not the transferee district, specifically - and that B.E. Technology will have sources of proof in Tennessee, this factor does not favor transfer.

### 2. Financial Hardships Attendant to Litigating in the Chosen Forum

People Media argues that the vast majority of its employee-witnesses reside in California or Texas.  (ECF No. 35-1 at 1-3, 11, 13.)  As a result, People Media contends that the "cost . . . of attendance for a majority of the willing witnesses plainly favors California," and, as a result, "the Burden on [People Media] will be significantly lightened if this litigation is conducted in California."  (Id. at 2, 14.)

B.E. states that it "would face a financial burden by having to litigate in the Northern District of California," while People Media does not assert that it would be "financially incapable of bearing the expense of litigating" in the transferor district.  (ECF No. 40 at 16.)  B.E.'s CEO Hoyle states that "B.E. will incur expenses it will not incur if the case remains in Memphis."  (Hoyle Decl., ECF No. 40-1, ¶ 9.)

The Court has considered "the relative ability of litigants to bear expenses in any particular forum" among the factors in a § 1404(a) case.  Ellipsis, Inc. v. Colorworks, Inc., 329 F. Supp. 2d 962, 970 (W.D. Tenn. 2004).  In the instant case, B.E.'s CEO stated that the company will incur additional expenses, but it has not shown with any specificity how detrimental those expenses would be to the company.  Further, while Hoyle stated that his personal financial status would be

22

adversely affected by litigating in California, he did not state why or how his personal finances would impact B.E., the party to the instant case. (See Hoyle Decl., ECF No. 40-1, ¶ 9.) People Media, however, has also not asserted either how it will be inconvenienced by — or that it cannot bear the expense of — litigating in the Western District of Tennessee. (See ECF No. 35-1.) Accordingly, the Court does not find this to be a dispositive factor in considering People Media's Motion as neither B.E. nor People Media has made a showing that they will be adversely affected by litigating in either district. The paramount consideration remains whether the Northern District of California is more convenient to the parties than B.E.'s chosen forum. With respect to convenience, the Court finds this factor does not weigh in favor of transfer. People Media's conclusory assertions that it will be inconvenienced by litigating the instant action in this District are insufficient to meet its burden of demonstrating a financial hardship.

In summary, People Media has not carried its burden in demonstrating that the Northern District of California would be a more convenient forum for the parties. Accordingly, this factor does not favor transfer.

### C. Interests of Justice

People Media argues that transfer to the Northern District of California is appropriate based on additional considerations

that pertain to the interests-of-justice factor. (ECF No. 35-1 at 15-17.) These considerations include the "public-interest concerns, such as systemic integrity and fairness," of the proceedings. See Moore, 446 F.3d at 647 n.1. In the instant case, the Court will consider the relative trial efficiency of the transferee and transferor districts and the localized interest in the litigation.

### 1. Trial Efficiency

People Media argues that "[t]here are no serious concerns regarding court congestion in the Northern District of California that weigh against transfer." (ECF No. 35-1 at 16.) While People Media admits that the median time from filing to trial in the Northern District of California is 2.72 years, roughly a year more than the median time in the Western District of Tennessee, it asserts that because "B.E. does not make or sell any product . . . its position in the market is not threatened or subject to attrition [and is, thus,] 'not in need of a quick resolution.'" (Id. at 16-17 (quoting In re Morgan Stanley, 417 F. App'x 947, 950 (Fed. Cir. 2011)).) Further, People Media asserts that "last year, judges in the Western District of Tennessee averaged sixty-one (61) more pending cases than those in the Northern District of California." (Id. at 17.) Accordingly, People Media asserts that this factor is neutral. (Id.)

24

B.E. argues that transfer to the Northern District of
California "would likely delay trial of this case by at least
one year." (ECF No. 40 at 17.) B.E. cites the 2012 Federal
Court Management Statistics for both districts to illustrate
that the median time from filing to trial, in the twelve-month
period ending on September 30, 2012, is almost a year later in
the Northern District of California than in the Western District
of Tennessee. (Id. (citing ECF No. 40-4).)

While this District may have a shorter median time from
filing to trial, the caseload for judges in this District is
greater than the Northern District of California. Accordingly,
the Court finds this factor neutral to its determination of
whether the Northern District of California is the more
convenient forum.

### 2.   Local Interest

People Media argues that the Northern District of
California has strong local ties to the instant case because
"many of the Defendants maintain their principal place of
business in the Northern District of California." (ECF No. 35-1
at 16.) Additionally, People Media asserts that B.E.'s ties to
the Western District of Tennessee should be discounted as "[t]he
'314 patent was not developed in Tennessee . . . and B.E.
appears to have no actual operations in Tennessee." (Id.)

Accordingly, B.E.'s "ephemeral relationship cannot create a local interest in the litigation." (Id.)

B.E. argues that the Western District of Tennessee has a substantial local interest in the instant case because Hoyle, the holder of the '314 patent and CEO of B.E., is located in this District. (ECF No. 40 at 19.) B.E. also asserts that its ties to Tennessee are not "recent, ephemeral, or manufactured for the purposes of litigation." (Id. at 18.) Hoyle states that he has resided in the Western District of Tennessee since 2006, that Memphis is B.E's principal place of business, and that the sources of proof pertinent to the instant case are located in this District. (Hoyle Decl., ECF No. 40-1, ¶¶ 2-4, 7-8.)

While the Defendants in the other cases brought by B.E. may have their principal places of business Northern District of California, People Media is neither incorporated in, nor does it maintain a principal place of business in, that District. Additionally, the Court finds that B.E.'s connection to the Western District of Tennessee was not manufactured for the purposes of litigation. B.E.'s founder and CEO, who is also the holder of the '314, has resided in this District for seven years. B.E.'s connections, therefore, are neither "recent" nor "ephemeral." Accordingly, the Court finds that this factor does not weigh in favor of transfer.

In summary, the Court finds that, in balancing the statutory factors, People Media has not met its burden in demonstrating that the Northern District of California is a more convenient forum than the Western District of Tennessee.

**D.   Alternate Venue**

Alternatively, People Media moves the Court to transfer the instant case to the Northern District of Texas.  People Media asserts the following in support:  that all of its "technical documents and source code are located in the Northern District of Texas;" that "employees responsible for designing and developing the accused instrumentalities" are located in the Northern District of Texas; and that the "Northern District of Texas has a strong local interest in adjudicating claims that call into question the activities of companies and employees who . . . reside and work in the District." (ECF No. 35-1 at 18-19.)

In the instant case, transfer to the Northern District of Texas presents the same issues as transfer to the Northern District of California.  Additionally, People Media has provided only bare assertions in support of transferring the instant action to the Northern District of Texas.  Therefore, the Court's analysis is the same.  Accordingly, the Court finds that transfer to the Northern District of Texas is inappropriate.

**IV.    CONCLUSION**

For the foregoing reasons, People Media's Motion to Transfer is DENIED.  Accordingly, the Court hereby LIFTS the February 12, 2013, stay of all proceedings.  (ECF No. 38.)

As a result of the stay being lifted, People Media's response to B.E.'s pending Motion to Dismiss (ECF No. 33), filed January 25, 2013, is due thirteen (13) days from the entry of this Order.

**IT IS SO ORDERED** this 12th day of July, 2013.


                                    s/ Jon P. McCalla_____
                                    CHIEF U.S. DISTRICT JUDGE